UNITED STATES FIDELITY AND GUARANTY COMPANY OF BALTIMORE, MARYLAND, a corporation, Plaintiff,

v.

Manuel C. CHAVEZ, Defendant,
Mary S. Chavez, Intervenor.

Civ. A. No. 2508.

United States District Court
D. New Mexico.

Dec. 7, 1954.

A. H. McLeod, Albuquerque, N. M., for plaintiff.

H. O. Waggoner, Albuquerque, N. M., for intervenor.

ROGERS, District Judge.

This action involves the respective rights of the United States Fidelity and Guaranty Company of Baltimore, Maryland, hereinafter referred to as "bonding company", the corporate surety on a County Treasurer's bond written for Manuel C. Chavez, on the one hand, and Mary S. Chavez, wife of Manuel C. Chavez, on the other hand, in and to four tracts of real estate in Valencia County, attached in this cause, which was a proceeding instituted by the bonding company against Manuel C. Chavez, to recover losses paid by the bonding company on some bonds, the losses being caused by shortages of Manuel Chavez' during the two bonding periods.

Jurisdiction in this case is predicated upon diversity of citizenship, as between the bonding company, a Maryland corporation, and Manuel C. Chavez, a resident of New Mexico, and the amount involved, which was alleged and has proved to be in excess of $3,000. The defendant Chavez was elected Treasurer of Valencia County for two two-year terms, commencing January 1, 1949, and the second commencing January 1, 1951. By the law of the State of New Mexico, the defendant was required to file a surety bond running to the State of New Mexico, conditioned upon the faithful performance of his duties as County Treasurer, the rendering of true accounts of his office, performance of his duties as such, as required by law, and the paying over of all monies coming into his hands by virtue of the office. A bond in similar, if not identical, terms, was issued by the bonding company for the second term commencing January 1, 1951.

During the second term of the defendant, audits of his office reflected shortages for the first period in the amount of $20,908.02, and in the second term, of $44,021.45. The bonding company has, as above stated, instituted this suit to recover the above amounts which it paid to the State of New Mexico, basing its two causes of action, one for each elective term, upon the indemnity provisions contained in the applications made by Manuel C. Chavez for the issuance of each of said bonds.

Manuel C. Chavez did not enter his appearance in this cause, and on the trial date, a judgment was rendered against him by default, for each of the amounts of the shortage paid by the bonding company, together with attor-

neys' fees for the bonding company's attorneys, totalling $5,000. During the pendency of this cause, the depositions of Manuel C. Chavez and Mary S. Chavez, intervenor, were taken, the net effect of which is that the defendant Manuel C. Chavez denies any knowledge as to any embezzlement of state funds, and any knowledge as to where the amounts for which he is charged as being short, went.

Mary S. Chavez, the wife, was granted leave, during the pendency of this cause, to file her petition in intervention, to establish her claims against the four tracts of land which were attached by the Marshal of this District. In her petition, denominated "Answer in Intervention", she alleges that on April 27, 1951, title was taken on Tract 7–B–2–B, Map 79 of the Middle Rio Grande Conservancy District, consisting of 12 acres, by Manuel C. Chavez and Mary S. Chavez; that the said deed by which title was so taken, contained no designation of the grantees as husband and wife. The intervenor claims an undivided one-half interest in that property, as a tenant-in-common with Manuel C. Chavez. She further alleges that Tract 7–B–1, Map 79, Middle Rio Grande Conservancy District, consisting of 8.40 acres, was deeded to Manuel C. Chavez prior to the marriage of the parties, but that considerable improvements have been made thereon by community funds, and she claims community interest in the value of the improvements constructed on this property. The third and fourth tracts can be considered as one unit, inasmuch as, according to Mrs. Chavez' claim, they were included in one quitclaim deed made to Manuel C. Chavez and Mary S. Chavez, his wife, and cover Tract 7–B–4, Map 79, containing .30 acres, and Tract 7–B–6, Map 79, containing 13 acres. As to these tracts, she claims a one-half undivided community interest therein.

The above constitutes all of the facts adduced at the trial of this cause. No proof was offered by the bonding company plaintiff, that any of the shortages were converted by Manuel C. Chavez, and certainly no evidence was offered that any funds representing the shortage were used by either the defendant or intervenor, in acquiring title to or improvements of the tracts here involved. The case thus devolves into one requiring the application of the pertinent law to the situation above outlined.

The Court will take up in its decision as to the relative rights of an attaching creditor and those of a wife, to: first, the property conveyed to Manuel C. Chavez prior to coverture; next, the property granted to Manuel C. Chavez and Mary S. Chavez, listing them by name, but with no description as to marital status; and lastly, the conveyance to these persons designating them as husband and wife.

The Court is of the opinion that the premises conveyed to the defendant prior to coverture is his separate property. See Section 65–305, N.M.S.A., 1941, which provides that all property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise or descent, is his separate property. The premises having been conveyed to him prior to coverture, were owned by him before marriage, and are within the first clause of the above-discussed statute. In connection with this property, the intervenor-wife, alleges that during their marriage, improvements consisting of dwelling house and appurtenances thereto, were constructed with community funds, and she claims a community interest in the value of improvements constructed on said property.

The law on this latter question appears to be definitely settled in New Mexico, by the case of McElyea v. McElyea, 49 N.M. 322, 163 P.2d 635. In that case the Supreme Court held that property acquired in New Mexico takes its status as community or separate property at the time and by the manner of its acquisition. The case stands for the further point that subsequent improvement of the premises with community funds does not, of itself, change the nature of the premises, but would only create an indebtedness as between the

spouses. It therefore appears that the question of subsequent erection of improvements with community funds is immaterial to the respective rights of the two contenders, here, and at most, would merely give rise to an indebtedness as between Mr. and Mrs. Chavez. The Court therefore holds that Tract 7–B–1, Map 79, is subject to sale under the attachment of the bonding company.

■ As to Tract 7–B–2–B, acquired by deed running to Manuel C. Chavez and Mary S. Chavez of Route 2, Box 534, Los Lunas, the Court is of the opinion that the estate conveyed by such deed was that of tenants-in-common. Accordingly, that the attachment seized the undivided one-half interest in Manuel C. Chavez, in and to the said premises, but that the interest of Mary S. Chavez, his wife, was not affected thereby. The Court is of the opinion that this question is covered by Section 65–401, supra, the pertinent provisions of which are as follows:

"All other real and personal property acquired after marriage by either husband or wife or both, is community property; but whenever any real or personal property, or any interest therein or encumbrance thereon is acquired by a married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property. And if acquired by such married woman and any other person the presumption is that she takes the part acquired by her as a tenant in common, unless a different intention is expressed in the instrument; except, that when any such real or personal property is acquired by husband and wife by an instrument in writing in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is community property of said husband and wife. The presumptions in this section mentioned, are conclusive in favor of any person dealing in good faith and for valuable consideration with such married woman or her legal representatives or successor in interest and regardless of any change in her marital status after acquisition of said property."

Directing attention to the second sentence of the above-quoted portion of the statute, it will be seen if the premises is acquired by a married woman and any other person, the presumption is that the married woman takes the part acquired by her as a tenant in common, unless a different intention is expressed in the instrument. All that can be seen by an inspection of the quitclaim deed, is that title was conveyed to Manuel C. Chavez and Mary S. Chavez, of Route 2, Box 534, Los Lunas. I do not think the address appearing after their names is sufficient to express an intention other than to vest in Mary S. Chavez an estate in the premises as a tenant in common. Her estate, as a tenant in common, under the terms of the above-mentioned statute, vests in her such estate as her separate property.

Under the facts of this case, no attempt has been made to show that Mary S. Chavez is in any way responsible for the loss appearing in the records of her husband's public office, and accordingly, her separate estate is not liable for her husband's separate obligations. In this connection see, also, Section 65–309, supra, which provides that the separate property of a wife is not liable for the debts of her husband, but is liable for her own debts contracted before or after marriage.

■ We now turn to the last problem, which involves the respective rights of the bonding company and Mary S. Chavez to Tract 7–B–4 and Tract 7–B–6, Map 79, Middle Rio Grande Conservancy District, acquired by a quitclaim deed dated April 27, 1951, running to Manuel C. Chavez and Mary S. Chavez, his wife. Recourse once more to Section 65–401, supra, in the second clause of the second sentence thereof, demonstrates that when the real estate is acquired by husband and wife by an instrument in writing in which they are described as husband and

wife, unless a different intention is expressed in the instrument, the presumption is that such property is community property of said husband and wife.

As appears from the recitation of the facts in this case, no evidence was offered in this cause, tending to show any circumstances that would indicate a situation other than that the couple received the premises as their community property, and nothing appears, at all, in the instrument in question, which would reflect a different intention expressed by the deed. The Court accordingly holds that these two tracts, totalling 13.30 acres, is community property of the husband and wife.

■■ We are now confronted with the problem as to whether all of said community property, or the interest of the husband therein, or none of the community property, is liable for the judgment which the bonding company now has in its favor, and against Manuel C. Chavez, for shortages occurring during the periods of the bonds written for Chavez by the bonding company. Considerable time and space could be consumed by a detailed history of the community property law of this State. An excellent discussion thereof, by Chief Judge Phillips of the Tenth Circuit Court of Appeals, appears in the case of Hernandez v. Becker, 54 F.2d 542. Anyone interested in this phase of the New Mexico property laws is directed to that case. That the interest of each member of a community is an existing interest, and not merely an expectancy, was first stated with finality in the case of Beals v. Ares, 25 N.M. 459, 185 P. 780. A case which decides that a wife's interest in community real estate can be sold under foreclosure of a lien arising on a money judgment against the wife, alone, for personal tort committed during coverture, is McDonald v. Senn, 53 N.M. 198, 204 P.2d 990, 10 A.L.R.2d 966. In an elaborate opinion, Judge Brice decided that a wife's interest in community property in New Mexico, is vested in her. He further held that the public policy of the State of New Mexico on the subject of the community property does not preclude a holding that the wife's vested interest in community real property can be segregated and subjected to a statutory judgment lien for a personal tort committed by the wife during the coverture. If the estate of the wife in and to community property can be so segregated and sold under such foreclosure, it would appear, a fortiori, that a like vested interest of the husband in community property can be segregated and sold under like conditions for a separate legal liability of the husband. The Court does not think that the entire community estate would be subject to the liability of a husband, predicated upon a loss found to exist in his office as a County Treasurer, particularly when there is no evidence that the husband embezzled the sum charged as a shortage, or that the amount of the shortage or any part thereof went into the community estate. In other words, it is not a liability from which the community estate benefitted one iota, according to the facts of this case.

There were cited some cases from the states of Arizona and Washington, and a case from the U. S. District Court of Washington, construing an Idaho statute. These are Shaw v. Greer, 67 Ariz. 230, 194 P.2d 430, from Arizona; Great Am. Indem. v. Garrison, D.C., 75 F.Supp. 811; Kies v. Wilkinson, 114 Wash. 89, 194 P. 582, 12 A.L.R. 833, and an annotation commencing at page 837 of the last cited volume. All of the cases in the annotation are likewise from the State of Washington. The Courts of Washington apparently feel that a malicious tort committed by one of the spouses without the knowledge, consent or ratification of the other, and not resulting in a benefit to the community, is not a community obligation, and hence community property is not subject to a judgment against the malicious tort-feasor spouse.

This Court fails to find any decision from either Arizona or Washington, vesting in both spouses of a community, a vested interest in the community property, such as has been held in New Mexico. The Court does not feel that the entire community estate of a married couple in New Mexico is subject to an

indebtedness arising out of the circumstances of the instant case, for the reasons that the wife, so far as the record is concerned, had no knowledge of any shortage on the part of her husband, nor, of course, did she give her consent thereto, nor ratify the acts, if any, of her husband, which resulted in the shortage. Neither did the shortage benefit the community estate, so far as any facts adduced on the trial are concerned. It would therefore appear that the vested estate of Mary S. Chavez, the intervenor in and to the community property tracts, is exempt from the attachment proceedings instituted by the bonding company. On the other hand, the community interest of Manuel C. Chavez is subject to sale under the attachment, inasmuch as his shortages created a separate liability on his part, resulting in a judgment against him.

The Court will entertain a judgment in accordance with this opinion at any time within ten days from the date hereof. If any amicable partition can be effected between the parties hereto on the premises above adjudicated to be held by the Chavezes as tenants in common, and as community property, the Court will approve such agreement. In the event an impasse occurs in this regard, the premises will be sold according to law.